## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THE AIR CONDITIONING, HEATING AND
REFRIGERATION INSTITUTE; HEATING,
AIRCONDITIONING & REFRIGERATION
DISTRIBUTORS INTERNATIONAL; AIR
CONDITIONING CONTRACTORS OF
AMERICA; GORMAN INDUSTRIES, INC.;
ALBUQUERQUE WINAIR CO.; ACTION AIR
CONDITIONING, INC. D/B/A ANDERSON AIR
CORPS; JMT, INC. D/B/A JOHNSTONE SUPPLY;
AFFORDABLE SERVICE, INC.; MORRISON
SUPPLY COMPANY; SOUTHWEST
WHOLESALE SUPPLY CO., D/B/A DOC
SAVAGE SUPPLY; PERRY SUPPLY CO., INC.;
ACADEMY PLUMBING HEATING AIR
CONDITIONING & ELECTRIC, INC.;
THOMPSON HEATING AND AIR
CONDITIONING, INC.; AND COMFY HOME,
LLC,

          Plaintiffs,                    No. CIV-08-633

v.

CITY OF ALBUQUERQUE,

          Defendant.

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Air Conditioning, Heating and Refrigeration Institute; Heating, Airconditioning

& Refrigeration Distributors International; Air Conditioning Contractors of America; Gorman

Industries, Inc.; Albuquerque Winair Co.; Action Air Conditioning, Inc. d/b/a Anderson Air

Corps; JMT, Inc. d/b/a Johnstone Supply; Affordable Service, Inc.; Morrison Supply Company;

Southwest Wholesale Supply Co., d/b/a/ Doc Savage Supply; Perry Supply Co., Inc.; Academy

Plumbing Heating Air Conditioning & Electric, Inc.; Thompson Heating and Air Conditioning,

Inc.; and Comfy Home, LLC, through their attorneys, file this Complaint against Defendant, and state as follows:

### Introduction

1.    This action seeks declaratory and injunctive relief under federal law against enforcement by Defendant of certain provisions contained in ordinances adopted by the City of Albuquerque (the "City"), as amended.  Certain provisions of those ordinances were to take effect April 1, 2008, then were postponed until July 1, 2008, and other provisions were further delayed to take effect July 1, 2009.  Plaintiffs are advised by the Albuquerque City Attorney's office that those provisions of the ordinances scheduled to take effect July 1, 2008 have been "administratively" postponed for a period of ninety (90) days from July 1, 2008.

2.    The pertinent ordinances adopted by the City are the following:  1) the Albuquerque Energy Conservation Code, Volume I (attached as Exhibit A); 2) the Albuquerque Energy Conservation Code, Volume II (attached as Exhibit B); the amendments to the Albuquerque Energy Conservation Code, Volume II (attached as Exhibit C); the High Performance Buildings Ordinance, as amended (attached as Exhibit D).  Volumes I and II of the Albuquerque Energy Conservation Code were adopted as part of an ordinance adopting a uniform administrative code and technical codes for the City of Albuquerque (attached as Exhibit E).  The ordinances and amendments in Exhibit A thorough E are referred to collectively herein as the "City Ordinances."

3.    Numerous provisions of the City Ordinances challenged in this action conflict with and are preempted by federal law and regulations which govern the energy efficiency and energy use of certain residential and commercial heating, ventilation and air conditioning products, including the Energy Policy and Conservation Act of 1975 ("EPCA"), as amended by the

National Appliance Energy Conservation Act of 1987 ("NAECA"), Public Law No. 100-12, and the Energy Policy Act of 1992 (EPACT), Public Law No. 102-486.  As a result, these provisions of the City Ordinances violate the Supremacy Clause in Article VI of the United States Constitution.  The products concerning which energy efficiency and energy use regulations or standards are purported to be established or mandated by the City Ordinances, which regulations or standards are preempted by federal law, are referred to herein as "HVAC products and water heaters."

4.    This Court has authority to grant the relief sought under 28 U.S.C. §§ 1331, 1343, and 2201, 42 U.S.C. §§ 1983 and 1988, and 42 U.S.C. § 6306(c).

### Additional Facts concerning Parties, Jurisdiction and Venue

5.    All Plaintiffs other than the Air Conditioning, Heating and Refrigeration Institute ("AHRI"); Heating, Airconditioning & Refrigeration Distributors International ("HARDI"), and Air Conditioning Contractors of America ("ACCA") are distributors of HVAC products and water heaters for use in the City of Albuquerque, or contractors who sell or install HVAC products and water heaters in the City of Albuquerque. Such distributors and contractors are referred to herein as "Distributor/Contractor Plaintiffs."

6.    Prior to adoption of the City Ordinances challenged in this action, the Distributor/Contractor Plaintiffs would have been entitled to sell and install residential and commercial HVAC products and water heaters for use in the City of Albuquerque, which products would have been subject only to federal energy efficiency and energy use standards.

7.    AHRI is a not-for-profit corporation organized under the laws of Virginia that represents approximately 350 member companies who manufacture and sell residential and commercial air conditioning, heating, ventilation, and commercial refrigeration equipment,

including furnaces, boilers, central air conditioners and heat pumps, and water heaters.  AHRI's members account for more than ninety percent of the residential and commercial air conditioning, space heating, water heating and commercial refrigeration equipment manufactured and sold in North America.  The members of AHRI employ more than 200,000 people nationwide.  AHRI's members include manufacturers who manufacture HVAC products and water heaters for use in the City of Albuquerque.

8.    HARDI is a not-for-profit corporation organized under the laws of Ohio that represents the interests of approximately 460 wholesale distributors of heating, ventilation, and air conditioning equipment and suppliers, plus over 300 manufacturing associates and nearly 200 other businesses.  Seven member companies of HARDI service the City of Albuquerque.

9.    ACCA is a not-for-profit corporation organized under the laws of Illinois that represents over 4,000 contractors who design, install, and maintain heating, ventilation, air conditioning, and refrigeration systems.  ACCA's members employ more than 66,000 people nationwide.  Many of ACCA's members are small businesses.  Twelve member businesses of ACCA are located in the City of Albuquerque.

10.    The City of Albuquerque is a home-rule municipality incorporated under the laws of the State of New Mexico.  The City's powers are defined and limited by its City Charter.

11.    The Distributor/Contractor Plaintiffs, who are distributors of HVAC products and water heaters for use in the City of Albuquerque, or who sell and install HVAC products and water heaters for use in the City of Albuquerque, and all other Albuquerque distributors and contractors who sell or install HVAC products and water heaters for use within the City of Albuquerque, have suffered and will continue to suffer harm in their respective places of

business in this State as a result of the City Ordinances they are challenging.    These harms include but are not limited to the effects set forth below.

12.    Numerous provisions of each of the City Ordinances challenged in this action will prohibit the Distributor/Contractor Plaintiffs, and all other Albuquerque distributors or contractors, from selling or installing residential or commercial HVAC products and water heaters for use in the City of Albuquerque that do not meet the requirements set forth in the City Ordinances.

13.    The challenged provisions of the City Ordinances will increase the costs of residential and commercial HVAC products and water heaters used in the City of Albuquerque including HVAC products and water heaters manufactured, distributed, sold, or installed by Plaintiffs.  Increased prices of these appliances will lead to losses of sales and related activities as residential consumers and businesses may choose to repair existing appliances rather than purchase more expensive, higher efficiency appliances.  Residential consumers and businesses having to replace existing gas furnaces with furnaces mandated by the City Ordinances, rather than furnaces that comply with federal energy efficiency requirements, will in many instances also incur significantly higher installation costs because the higher efficiency products require special venting and condensate drains.  This will give residential consumers and businesses further reason to repair, rather than replace, their existing appliances.

14.    The City Ordinances apply in large part to the construction of new homes. Increased prices of the HVAC products and water heaters in those new homes will increase the price of new home construction, which will lead to a decline in new home sales.

15.    As a result of the reductions in new home sales and installations of replacement systems, the Distributor/Contractor Plaintiffs and all other Albuquerque distributors and

contractors who sell and install HVAC products and water heaters for use in the City of Albuquerque will sustain economic harm through lost profits and goodwill compared to the status quo prior to adoption of the provisions of the City Ordinances challenged in this action.

16.    The Distributor/Contractor Plaintiffs, in reliance on the federal energy efficiency and energy use standards, have valuable investments in inventories of HVAC products and water heaters which comply with the federal energy efficiency and energy use standards, but which would not comply with the energy efficiency and energy use standards purportedly enacted by the City Ordinances.

17.    In addition, the City Ordinances, until they are enjoined, will disrupt sales of HVAC products and water heaters intended for use in the City of Albuquerque due to confusion of manufacturers, distributors and contractors about which standards they must adhere to.  This will impair the ability of the Plaintiffs to maximize sales and will restrict consumer choice.  This will cause further economic harm through lost profits and goodwill for the manufacturers of HVAC products and water heaters intended for use in the City of Albuquerque, the Distributor/Contractor Plaintiffs, and all other Albuquerque manufacturers, distributors and contractors who manufacture, sell or install HVAC products and water heaters for use in the City of Albuquerque, including manufacturers of such HVAC products and water heaters who are members of AHRI or  HARDI, and Distributor/Contractor Plaintiffs who are members of HARDI or ACCA.

18.    The interests of the Plaintiffs and all other manufacturers, distributors and contractors who manufacture, sell or install HVAC products and water heaters for use in the City of Albuquerque, including manufacturers of such HVAC products and water heaters who are members of AHRI or HARDI, and Distributor/Contractor Plaintiffs who are members of HARDI

6

or ACCA, that will be adversely affected by the challenged City Ordinances, are interests protected by federal law.  The federal Energy Policy and Conservation Act and associated regulations are intended to ensure that decisions to regulate the energy efficiency and energy use of residential and commercial appliances conform with criteria established by Congress, and are made by officials and agencies who are responsible to Congress and to the Executive authority of the federal  government.  The harms which will be and are being suffered by the Plaintiffs and all other Albuquerque manufacturers, distributors and contractors who manufacture, sell or install HVAC products or water heaters for use in the City of Albuquerque, including manufacturers of such HVAC products and water heaters who are members of AHRI or  HARDI, and Distributor/Contractor Plaintiffs who are members of HARDI or ACCA are injuries that federal law is designed to prevent, and they are directly traceable to the actions of Defendant that violate federal law.

19.    Distributors and Contractors in nearby cities and States which have not adopted the same regulatory provisions challenged in this action will not suffer the same or similar adverse effects on their business, nor will distributors in any other city or State which has not adopted those same regulatory provisions.  Those effects place the distributor Plaintiffs and all other Albuquerque distributors within a uniquely affected class harmed by the regulatory provisions challenged in this action.

20.    Venue of this Court is proper under 28 U.S.C. § 1391(b) because, among other things, the actions violating federal law stated in the Complaint impose injury in this District, Defendant is located here, and the regulatory provisions challenged here will be enforced here.

21.    Jurisdiction in this Court is also proper because, under 42 U.S.C. § 6306(c), federal district courts have express jurisdiction over suits brought by any adversely affected person concerning state and local government compliance with the Energy Policy and Conservation Act.

22.    The energy efficiency and energy use of major home and commercial appliances have been of national interest since the 1970s.  In 1975, Congress passed the Energy Policy and Conservation Act ("EPCA") which required the Department of Energy ("DOE" or the "Department") to prescribe voluntary, industry-wide efficiency improvements for certain major appliances.  H. Rep. No. 100-11 at 26.  In 1978, Congress amended EPCA by directing DOE to prescribe mandatory minimum efficiency standards for these products if technologically feasible and economically justified.  Id. at 27.  After DOE issued "no standard" standards, EPCA was amended in 1987 by the National Appliance Energy Conservation Act ("NAECA"), which established federal minimum energy efficiency standards for 13 "covered products," and tasked the DOE with periodically updating these standards. 42 U.S.C. § 6291 et seq.  The covered products include the following types of residential appliances and equipment: 1) central air conditioners and heat pumps (42 U.S.C. § 6295(d)); 2) water heaters, pool heaters and direct heating equipment (42 U.S.C. §6295(e)); and 3) furnaces and boilers (42 U.S.C. § 6295(f)). Each DOE rulemaking subsequent to the enactment of NAECA has increased the energy efficiency requirements for the covered products.   In 1992, EPCA was further amended by the Energy Policy Act ("EPACT 1992"), which established federal minimum energy efficiency standards for a variety of commercial HVAC products and water heaters.  42 U.S.C. § 6313(a).

23.    The federal law governing the energy efficiency of *residential* appliances is contained in EPCA, as amended by NAECA, codified at 42 U.S.C. 6291 et seq.   The federal law

governing the energy efficiency of *commercial* appliances is contained in EPCA, as amended by

EPACT 1992.  These provisions are codified at 42 U.S.C. § 6311 et seq.

### Federal Energy Efficiency and Energy Use Standards for Covered Residential Products

24.    The purposes of the federal energy conservation program for residential products

are to "provide Federal energy conservation standards applicable to covered products" and to

"authorize the Secretary [of Energy] to prescribe amended or new energy conservation standards

for each type (or class) of covered product."  42 U.S.C. § 6295(a).

25.    NAECA-covered residential heating and cooling equipment and water heaters are

often installed in small commercial establishments, in addition to their typical residential

installations.  NAECA's federal standards and NAECA's preemption provisions (described

below) apply to the manufacture of covered "consumer" products (42 U.S.C. § 6292(a))

regardless of the characterization of the building in which they are installed.

26.    Federal appliance efficiency standards are design requirements or minimum

efficiency requirements for appliances that establish actual requirements for each covered

product.  Federal minimum requirements ensure that "the least energy efficient products are

eliminated, resulting in greater average efficiency, decreased energy consumption by ratepayers,

and decreased demand requirements on utilities."  H.R. Rep. No. 100-11 at 18.

27.    EPCA, as amended by NAECA, contains express preemption provisions that bar,

with limited exceptions, any "State regulation, or revision thereof, concerning the energy

efficiency, energy use, or water use of the covered products. . . ."  42 U.S.C. § 6297(c).  The

preemption provisions are broadly framed because Congress recognized that a successful

national energy efficiency policy required that it "protect the appliance industry from having to

comply with a patchwork of numerous conflicting State requirements," H.R. Rep. No. 100-11 at

24, which could "increasingly complicate their design, production and marketing plans." S. Rep. No. 100-6 at 4 (1987).

28. The congressional history of NAECA demonstrates that the federal standards were designed to remain in place for specific minimum amounts of time to allow manufacturers to "obtain returns on their capital investments before being required to make further investments and other expenditures in order to meet more stringent requirements." H.R. Rep. No. 100-11 at 20. NAECA also allowed a lead-in period of between three to five years from the time a new standard was announced and the effective date of the new standard (eight years in the case of DOE's initial amendment of the federal furnace efficiency standards). *Id*. These provisions were intended to "end an era of confusion and uncertainty." H.R. Rep. No. 100-11 at 30.

29. Under EPCA, as amended by NAECA and EPACT 1992, the energy efficiency ratings of covered products must be determined using efficiency test procedures prescribed by DOE. These test procedures employ the energy efficiency descriptors set forth and defined in the federal statute. For example, Seasonal Energy Efficiency Ratio ("SEER") is the prescribed measure of energy efficiency for the cooling performance of residential central air conditioners and heat pumps. Heating Seasonal Performance Factor ("HSPF") is the measure of energy efficiency for the seasonal heating performance of residential heat pumps. Annual Fuel Utilization Efficiency ("AFUE") is the prescribed measure of efficiency for residential furnaces and boilers. Energy Factor ("EF") is the measure of efficiency for residential water heaters. The EF requirement is determined by use of an equation which produces different minimum EFs depending on the rated volume of the water heater.

30. NAECA also required DOE periodically to update the federal standards for residential appliances and equipment, see, e.g., 42 U.S.C. §§ 6295(d)(3)(A)(B); (e)(4)(A),(B) and

(f)(3)(B)(C), and required that any amended standards, like the initial NAECA standards, "be designed to achieve the maximum improvement in energy efficiency which the Secretary determines is technologically feasible and economically justified." 42 U.S.C. § 6295(o)(2)(A).

31.   Federal energy efficiency standards for air conditioners and heat pumps were revised and made more stringent in a DOE final rule published on January 22, 2001.  DOE raised the energy efficiency standards from 10 SEER to 13 SEER for new central air conditioners and from 10SEER/6.8 HSPF to 13 SEER/7.7 HSPF for new central air conditioning heat pumps.  See 66 Fed. Reg. 7170, 10 C.F.R. § 430.32(c)(2).  These standards became effective on January 23, 2006.  Federal energy efficiency standards for residential furnaces and boilers were revised and made more stringent in a DOE final rule published on November 19, 2007.  72 Fed. Reg. 65136.  The new standards for furnaces will become effective for products manufactured on or after November 19, 2015.  Depending on the type of furnace, the new standards increase the minimum efficiency standard from 78% AFUE to between 80% and 82% AFUE.  Id.  As to residential boilers, subsequent to the publication of the DOE final rule in November, 2007, Congress enacted, as part of the Energy Independence and Security Act of 2007, an 82% AFUE requirement along with several design specifications that will become effective September 1, 2012.  P.L. 110-140, § 303.

32.   Increasing the energy efficiency of covered products results in increased prices of the products and, in many cases, increased installation costs, especially in replacement situations. For example, in its most recent rulemaking to update the federal minimum efficiency standards for residential furnaces and boilers, DOE rejected a 90% AFUE minimum standard for gas furnaces (the standard level prescribed in the City Ordinances) in favor of an 80% AFUE minimum standard, in part because a 90% AFUE minimum standard would not be economically

justified for southern (warm climate) households, including New Mexico households. In rejecting the 90% AFUE standard, DOE found that for southern households the average installed price of an 80% AFUE gas furnace is $1,879, while the average installed price of a 90% AFUE gas furnace is $2,490, a difference of $611. See DOE's Technical Support Document found at http://www.eere.energy.gov/buildings/appliance_standards/residential/fb_tsd_0907.html.

33. NAECA provides general rules of preemption for state energy conservation standards both before and after a federal standard becomes effective for a covered product. 42 U.S.C. §§ 6297.

34. Government procurement regulations that prescribe more stringent standards for covered products are exempted from federal preemption. 42 U.S.C. § 6297(e).

35. DOE can grant a waiver of preemption to a State if the State appeals to the Secretary of DOE and the Secretary, through a stringent rulemaking process, finds that the State has established that the State regulation is needed to meet "unusual or compelling State or local energy or water interests," which are defined as interests "substantially different in nature or magnitude than those prevailing in the United States generally." 42 U.S.C. § 6297(d). To Plaintiffs' knowledge, the City has not applied for a waiver of preemption.

36. There is also a limited exception in NAECA from preemption for energy efficiency and energy use requirements that are incorporated into certain state or local building codes for *new construction*. 42 U.S.C. § 6297(f). This "building code" exception from preemption is intended to allow state and local governments to pursue "performance-based building code approaches." H.R. No. 100-11 at 39. A performance-based approach to energy efficiency identifies the desired or required overall energy performance of a building, without prescribing the means to meet that building energy performance objective. The legislative history describes

such approaches as "authoriz[ing] builders to adjust or trade off the efficiencies of the various building components so long as an energy goal is met." *Id.*

37.    Pursuant to NAECA, a performance-based building code for new construction must meet all of the following guidelines:  a) the code may depend on a baseline building design and its associated energy consumption, to which all other building designs will be compared (42 U.S.C. § 6297(f)(3)(D); b) the baseline building design must not require federally-covered products to have a greater efficiency than the federal standard unless the State has received a waiver from DOE (42 U.S.C. § 6297 (f)(3)(B)); and c) any trade-off using a federally-covered product must be on a one-for-one equivalent energy use basis (42 U.S.C. § 6297(f)(3)(C)).

38.    Alternatively, a performance-based building code can establish one or more optional "packages" (referred to in NAECA as "combinations of items") which meets the baseline building design.  42 U.S.C. § 6297(f)(3).  However, in each case where a package includes a NAECA-covered product for which the efficiency standard exceeds the federal standard, the code must also include as an alternative a package in which that NAECA-covered product just meets, but does not exceed, the applicable federal standard.  42 U.S.C. § 6297(f)(3)(E).

39.    NAECA's exception from preemption for performance-based building codes applies only to new construction, not to building renovations or replacements of existing systems.  42 U.S.C. § 6297(f)(1).  In the design of new construction, trade-offs can be made in the efficiencies or projected energy consumption of various building features, including the building envelope, wall and ceiling insulation, window area, lighting, HVAC equipment, and water heating equipment, to reach a desired overall building energy consumption objective. However, when various components of an existing building are being altered or renovated, there

is nothing to trade off against because the building envelope, insulation, lighting, etc. are already in place. Performance-based building codes contemplate the entire building and all of its systems as a single design and cannot be applied in a piecemeal fashion, such as to renovations or replacements of systems or equipment.

### Federal Energy Efficiency and Energy Use Standards for Covered Commercial Products

40.    EPCA, as amended by EPACT 1992, regulates the energy efficiency and energy use of industrial (or "commercial") products.  42 U.S.C. § 6311 et seq.  Covered commercial products include small commercial package air conditioners and heating equipment, large commercial package air conditioning and heating equipment, packaged terminal air conditioners and packaged terminal heat pumps, high input furnaces and boilers, and high input water heaters. 42 U.S.C. § 6311(1).

41.    With limited exceptions, federal standards for covered *commercial* products preempt any state or local regulations concerning the energy efficiency or energy use of such products.  42 U.S.C. § 6316(b)(2).

42.    The first exception from preemption for standards for commercial products is identical to that for residential products:  the Department can grant a waiver of preemption to a State if the Department, through a stringent rulemaking process, finds that the State has established that the State regulation is needed to meet "unusual or compelling State or local energy or water interests," which are defined as interests "substantially different in nature or magnitude than those prevailing in the United States generally."  42 U.S.C. §§ 6297(d) and 6316(b)(2)(D).  To Plaintiffs' knowledge, the City has not applied for a waiver of preemption.

43.    There is also a limited exception from preemption for energy efficiency standards for commercial products in State or local building codes for new construction.  42 U.S.C. §

14

6316(b)(2)(B).  Only in the event that the American Society of Heating, Refrigerating and Air-Conditioning Engineers ("ASHRAE") amends standards contained in ASHRAE Standard 90.1 respecting any of the federally-covered commercial products to specify a more stringent minimum efficiency standard does EPCA permit a State or local building code to adopt that more stringent standard.  42 U.S.C. § 6316(b)(2)(B).  The State or local building code cannot adopt any new, more stringent standard respecting a federally-covered product contained in amended ASHRAE Standard 90.1 before the effective date of the new standard specified in the amended ASHRAE Standard 90.1.  *Id.*

44.    ASHRAE 90.1 standards were amended in 2007 to become more stringent for small commercial package air conditioners and heat pumps, and large commercial package air conditioners and heat pumps.   The amended ASHRAE 90.1 standards do not take effect until January 1, 2010, so no State or local building code can adopt them to take effect before that date. See 42 U.S.C. § 6316(b)(2)(B)(ii).

45.    EPCA, as amended by EPACT 1992, provides *no* exception from preemption for performance-based building codes for commercial covered products, unlike the exception from preemption for residential products at 42 U.S.C. § 6297(f)(3).

**City Ordinances Mandate Standards more Stringent Than Federal Standards**

46.    In a number of important ways, numerous provisions of the City Ordinances challenged in this action mandate energy efficiency standards that are more stringent than the federal energy efficiency and energy use standards they would replace, and conflict in fundamental ways with the standards passed by Congress and updated regularly by DOE. Despite the express preemption provisions of EPCA, the City seeks to impose its own set of

15

energy efficiency standards for covered products, both residential and commercial, on Plaintiffs and all other similarly situated distributors and manufacturers.

47.    On September 17, 2007, the City Council passed City Council Bill No. O-07-105. The bill adopted a number of uniform administrative and technical codes related to building and construction, including Volumes I and II of the 2007 Albuquerque Energy Conservation Code. Council Bill No. O-07-105 was signed by the Mayor on September 27, 2007, was published by the City Clerk on October 5, 2007, and went into effect October 17, 2007.  On June 2, 2008, the City Council passed amendments to the 2007 Albuquerque Energy Conservation Code, Volume II ("Volume II").  Council Bill No. O-08-31.  The amendments were signed by the Mayor on June 6, 2008 and were published by the City Clerk on June 10, 2008.  The amendments to Volume II went into effect on June 18, 2008.  Volume I of the Albuquerque Energy Conservation Code has not been amended.

48.    Also on September 17, 2007, the City Council passed Council Bill O-07-73, the Albuquerque High Performance Buildings Ordinance.  Council Bill O-07-73 was signed by the Mayor on September 27, 2007 and was published by the City Clerk on October 5, 2007.  The High Performance Buildings Ordinance went into effect on January 10, 2008.  The High Performance Buildings Ordinance has not yet been codified into City Ordinances.  On June 2, 2008, the City Council passed amendments to the High Performance Buildings Ordinance. Council Bill No. O-08-31.   The amendments were signed by the Mayor on June 6, 2008, and were published by the City Clerk on June 10, 2008.  The amendments to the High Performance Buildings Ordinance went into effect on June 18, 2008.

16

## Volume I of the Albuquerque Energy Conservation Code:
## Commercial and Multi Family Dwellings

49. The challenged provisions of Volume I apply generally to commercial and multi-family residential dwellings. More specifically, the challenged provisions of Volume I apply to new construction, additions and alterations to existing buildings, and substantial alterations of existing buildings. Section 4.1. The challenged provisions of Volume I also apply to replacements of heating, ventilation, air-conditioning, service water heating "and other systems and equipment" in an existing building. Section 4.1.1.6

50. Volume I, Section 6.3.2, via reference to Tables 6.3-1 and 6.3-2, prescribes minimum efficiency standards for EPCA-covered equipment that are more stringent than applicable federal standards and, in some cases, prescribes additional minimum efficiency requirements not required by federal law.

51. Specifically, Volume I, Section 6.3.2 prescribes a minimum 14.0 SEER for central air conditioners (0-65 kBtuh), which is more stringent than the current 13.0 SEER federal minimum efficiency standard applicable to these products, and is thus preempted.

52. Volume I, Section 6.3.2 prescribes a minimum 11.0 EER and minimum 11.4 IPLV (Integrated Part-Load Value) for small commercial package central air conditioners (cooling capacity greater than 65 kBtuh and up to and including 135 kBtuh). This standard is more stringent than the current applicable federal minimum standard of 8.9 EER, with no minimum IPLV, and is thus preempted by federal law. 10 C.F.R. § 431.97(a). Amended ASHRAE Standard 90.1-2007 prescribes a new minimum 11.0 EER for these products, but this new minimum ASHRAE 90.1 standard does not take effect until January 1, 2010. The amended ASHRAE 90.1 standard for these products does not contain a minimum IPLV. Volume I

therefore does not qualify for the ASHRAE 90.1 exception from preemption for small commercial package central air conditioners.

53.    Volume I, Section 6.3.2 prescribes a minimum efficiency of 10.8 EER and minimum 11.2 IPLV for large commercial package central air conditioners (greater than 135 kBtuh and up to and including 240 kBtuh).  These standards are more stringent than the current applicable federal minimum standard of 8.5 EER and no minimum IPLV.  10 C.F.R. § 431.97(a). ASHRAE Standard 90.1-2007 also prescribes a new minimum 10.8 EER for these products, but the new minimum in the amended ASHRAE 90.1 standard does not take effect until January 1, 2010.  The amended ASHRAE 90.1 standard for these products does not contain a minimum IPLV.  Volume I therefore does not qualify for the ASHRAE 90.1 exception from preemption for large commercial package central air conditioners.

54.    Volume I, Section 6.3.2 prescribes a minimum 90% AFUE for gas furnaces (input rate less than 225 kBtuh), which is more stringent than the current 78% AFUE federal minimum efficiency standard applicable to these products, 42 U.S.C. § 6295(f)(1), and is thus preempted by federal law.

55.    Volume I, Section 6.3.2 prescribes a minimum 14.0 SEER and minimum 8.0 HSPF for heat pumps (cooling capacity less than 65 kBtuh), which is more stringent than the current federal minimum efficiency standard applicable to this type and size of heat pump of 13.0 SEER and 7.7 HSPF, 10 C.F.R. § 430.32(c), and is therefore preempted by federal law.

56.    Volume I, Section 6.3.2 prescribes a minimum 10.6 EER, minimum 11.0 IPLV, and minimum 3.2 COP (coefficient of performance) for heat pumps greater than 65 kBtuh and up to and including 135 kBtuh, which is more stringent than the current applicable federal minimum standards of 8.9 EER, 3.0 COP, with no minimum IPLV, 42 U.S.C. 6313(a)(1)(C) and (F), and is

18

therefore preempted by federal law.  ASHRAE Standard 90.1-2007 prescribes a new minimum 10.8 EER and a new minimum 3.3 COP for these products, but the new minimums in the amended ASHRAE 90.1 standard do not take effect until January 1, 2010.  The amended ASHRAE 90.1 standard for these products does not contain a minimum IPLV.  Volume I therefore does not qualify for the ASHRAE 90.1 exception from preemption for heat pumps between 65 kBtuh and 135 kBtuh.

57.    Volume I, Section 6.3.2 prescribes a minimum 10.1 EER, 11.0 IPLV and 3.1 COP for heat pumps greater than 135 kBtuh, which is more stringent than the current applicable federal minimum standards of 8.5 EER, minimum 2.9 COP, with no minimum IPLV, 42 U.S.C. § 6313(a)(2)(A) and (B), and is thus preempted by federal law. ASHRAE standard 90.1-2007 prescribes new EER and COP minimums for heat pumps greater than 135 kBtuh and less than 240,000 Btuh which are more stringent than those prescribed by the Albuquerque code; however, these new minimums do not take effect until January 1, 2010.  Moreover, there are no IPLV standards prescribed in ASHRAE Standard 90.1-2007 for these products. Volume I therefore does not qualify for the ASHRAE 90.1 exception from preemption for heat pumps greater than 135KBtuh.

58.    Volume I, Section 7.3.2, via reference to Table 7.3-2, prescribes minimum efficiency standards for EPCA-covered water heaters that are more stringent than the applicable federal standards for these products.  Specifically, Volume I, Section 7.3.2 prescribes a minimum 0.81 EF (Energy Factor) or minimum 81% Et (Thermal Efficiency) for gas water heaters.  The current federal minimum efficiency standard for NAECA-covered 40-gallon gas water heaters (the most common size) is 0.62 EF and for EPACT 1992-covered gas instantaneous water heaters is 80% Et.  10 C.F.R. § 430.32(d). The City standards are therefore more stringent than

the federal standards and are thus preempted by federal law. The standards for these products contained in ASHRAE Standard 90.1-2007 are identical to the current federal standards. Volume I therefore does not qualify for the ASHRAE 90.1 exception from preemption for gas water heaters.

59. Volume I, Section 7.3.2 prescribes a minimum 90% Et for gas storage water heaters having an input greater than 75 kBtuh (commercial water heaters), which is more stringent than the current federal minimum standard of 80% Et, 10 C.F.R. § 430.32(d), and is thus preempted by federal law. ASHRAE Standard 90.1-2007 is identical to the current federal standard. Volume I therefore does not meet the ASHRAE 90.1 exception from preemption for gas commercial water heaters.

60. Volume I, Sections 7.3.1 and 7.3.2 prescribes a minimum standard for electric storage water heaters for small retail buildings which requires such products to have a minimum EF greater than 0.99 - (0.0012 x Volume), which is more stringent than the current federal minimum EF standard of 0.97 - (0.00132 x Volume) for NAECA-covered electric storage water heaters. 10 C.F.R. § 430.32(d). Volume I's standard for electric storage water heaters is thus preempted by federal law. There is no applicable ASHRAE standard for this type of covered product.

61. Volume I, Sections 6.5 and 7.5, outline a performance-based option for compliance with the prescriptive requirements for HVAC products and water heaters. However, with respect to EPACT-covered commercial equipment, EPCA does not provide an exemption from preemption for performance-based building codes. See 42 U.S.C. § 6316(a)(2). Therefore, Sections 6.5 and 7.5 do not save the challenged provisions of Volume 1 from federal preemption.

20

62.    Any person violating the provisions of Volume I is subject to civil and criminal penalties, including monetary fines and imprisonment of up to 90 days.  See Section 9, Council Bill No. O-07-105.

**Volume II of the Albuquerque Energy Conservation Code:**
**One- and Two- Family Detached Dwellings and Townhouses**

63.    The challenged provisions of Volume II apply generally to one- and two- family detached dwellings and townhouses.   Section 101.2.    More specifically, the challenged provisions of Volume II apply to new construction, additions, alterations, renovations and repairs of existing buildings or "building systems."  Section 101.7.3, as amended.

64.    Section 403.2 of Volume II, as amended, via reference to Table 403.2, requires central air conditioners, both split systems and single packages, to meet a minimum efficiency of 14.0 SEER.  The current federal minimum efficiency standard for these products is 13 SEER.  10 C.F.R. § 430.32(c).  This provision of Volume II thus imposes a higher standard than the federal standards for central air conditioners and is therefore preempted by federal law

65.    Section 403.2 of Volume II, as amended, via reference to Table 403.2, requires residential heat pumps to meet a minimum efficiency of 8.2 HSPF for split system air-source heat pumps and 8.0 HSPF for single package air-source heat pumps.   The current federal minimum efficiency standard for both types of residential heat pumps is 7.7 HSPF.  10 C.F.R. § 430.32(c).  This provision of Volume II thus imposes a higher standard than the federal standards for heat pumps and is therefore preempted.

66.    Section 403.2 of Volume II, as amended, requires gas furnaces with input less than 225,000 Btu/h to meet a minimum efficiency of 90% AFUE.  The current federal minimum efficiency standard is 78% AFUE.  42 U.S.C. § 6295(f)(1).  This provision of Volume II thus

21

imposes a more stringent standard than the federal standard for gas furnaces and is therefore preempted.

67. Section 403.2 of Volume II, as amended, requires oil fired furnaces with input of less than 225,000 Btu/h to meet a minimum efficiency of 83% AFUE, whereas the current federal minimum efficiency standard for oil residential furnaces is 78% AFUE. This provision of Volume II thus imposes a more stringent standard than the current federal standards for oil fired furnaces and is therefore preempted.

68. Section 403.2 of Volume II, as amended, requires residential boilers (with input less that 300,000 Btuh) to meet a minimum efficiency standard of 85% AFUE, whereas the current federal minimum efficiency standard for gas and oil boilers is 80% AFUE (gas steam boilers = 75% AFUE). This provision of Volume II thus imposes a more stringent standard than the current federal standard for this type of residential boiler and is therefore preempted.

69. Section 403.9 of Volume II, as amended, via reference to Table 403.9.2(a), requires a minimum 0.62 EF for 40-gallon gas storage water heaters effective up until January 1, 2009, and then bans the installation of "conventional" gas storage water heaters after January 1, 2009. Effective January 1, 2009, gas storage water heaters must have a minimum EF of 0.70 (for "advanced, non-condensing" models) or 0.80 (for condensing models). The current federal minimum efficiency standard for a 40-gallon residential gas storage water heater is 0.59. 10 C.F.R. § 430.32. The current federal minimum efficiency standards for other sizes of water heaters are also less stringent that what Section 403.9 of Volume II prescribes. Therefore, both the current and the prospective Volume II standards for gas storage water heaters are preempted by federal law.

70. Section 403.9 of Volume II, as amended, via reference to Table 403.9.2(a) requires a minimum 0.92 EF for 50-gallon electric storage water heaters effective until January 1, 2009. The current federal minimum efficiency standard for a 50-gallon residential electric storage water heater is 0.90 EF. 10 C.F.R. § 430.32(d). Since the Volume II standard is more stringent than the federal standard, it is preempted. The same is true for the standards prescribed in Volume II for other sizes of electric storage water heaters. Additionally, Section 403.9.3 of Volume II, as amended, completely bans the installation of conventional electric resistance water heaters after January 1, 2009. State or local energy efficiency regulations cannot lawfully ban the use of NAECA-covered products that are compliant with applicable federal minimum efficiency standards.

71. Volume II, as amended, purports to provide two performance-based compliance alternatives. *See* Sections 401.1, 404, and 405. While nominally "performance-based," these alternatives do not meet the requirements of a performance-based building code as outlined in 42 U.S.C. § 6297(f). Furthermore, these alternatives *require* all projects that choose the "performance-based" option to comply with "all of the mandatory provisions" of Volume II. §§ 401.1, 404.2, and 405.2. Those mandatory provisions include a total ban on certain types of heating equipment and water heaters. This violates the performance-based code exception from preemption in EPCA, under which a State or local government cannot mandate or prescribe energy efficiency requirements, unless the State has been granted a waiver by the Secretary of DOE. State or local energy efficiency regulations cannot ban the use of NAECA-covered products that are compliant with applicable federal minimum efficiency standards.

72. Section 101.7.3 of Volume II requires "additions, alterations, renovations, or repairs to an existing building, building system, or portion thereof" to either meet the prescriptive

23

requirements or the performance alternatives of Volume II.   The identification of performance-based alternatives for these activities does not save the objectionable provisions in Volume II from preemption for at least three reasons.   First, EPCA's performance-based code exception from preemption applies only to buildings codes for *new construction*, not alterations, renovations, or repairs to existing building systems.   Second, as discussed above, the "performance-based" alternatives to compliance in Volume II do not meet the requirements of a performance-based building code as outlined in 42 U.S.C. § 6297(f).   Third, since alterations, renovations or repairs to existing building systems do not have a performance-based alternative under Volume II, they would, pursuant to Section 101.7.3, be required to meet Volume II's prescriptive requirements, which, as outlined herein, mandate numerous energy efficiency standards more stringent than federal standards and are therefore preempted.

73.   Any person violating the provisions of Volume II is subject to civil and criminal penalties, including monetary fines and imprisonment of up to 90 days.   See Section 9, Council Bill No. O-07-105.

### High Performance Buildings Ordinance

74.   The High Performance Buildings Ordinance, as amended, applies to all new buildings and to the certain replacements of specific components and systems.   Section 3(A). Seven sections of the High Performance Buildings Ordinance also apply, with limited exceptions, to "existing buildings undergoing repairs, alterations or rehabilitation when the work area . . . exceeds 50 percent of the aggregate area of the building . . . ."

75.   Section 3(A)(2) of the High Performance Buildings Ordinance, as amended, requires building officials to establish "performance-based criteria" which can be used by building officials as an alternative means of establishing compliance.   However, Section 3(A)(2)

24

is not itself a performance-based code of the type described in 42 U.S.C. 6297(f)(3) and it gives discretion to the building official to impose either performance-based criteria or the mandatory standards of Section 3(F) and Section 3(J). Section 3(A)(2) therefore does not qualify for an exception from preemption under 42 U.S.C. 6297(f).

76. Section 3(F)(1) of the High Performance Buildings Ordinance, as amended, requires forced air heating furnaces, with limited exceptions, to meet a minimum standard of 90% AFUE or be Energy Star rated. The current Energy Star Rating for gas furnaces is 90% AFUE or greater, and for oil furnaces is 83% AFUE or greater. The current federal standard for gas- and oil-fired furnaces is 78% AFUE. 42 U.S.C. § 6295(f)(1). The High Performance Buildings Ordinance thus imposes a higher standard than the current federal standard and is therefore preempted by federal law.

77. Section 3(F)(2) of the High Performance Buildings Ordinance, as amended, requires "cooling equipment" to meet a minimum standard of 14 SEER, or to be evaporative coolers. Section 3(E). The current federal standard for central air conditioners is 13 SEER. 10 C.F.R. § 430.32(c). The High Performance Buildings Ordinance thus imposes a higher standard than the federal standard and is therefore preempted by federal law.

78. Section 3(J)(1) of the High Performance Buildings Ordinance, as amended, is preempted by federal law because it prescribes minimum efficiency standards for NAECA-covered water heaters and these standards are more stringent than applicable federal standards Between now and January 1, 2009, for example, the High Performance Building Ordinance mandates 0.62 EF for 40-gallon gas storage water heaters and 0.92 EF for 50-gallon electric storage water heaters, whereas the federal standard is 0.59 EF for 40-gallon gas storage water heaters and 0.90 for 50-gallon electric storage water heaters. The same section imposes a total

ban on electric storage-type water heater with a volume of 80 or more gallons. There is no federal prohibition against the installation of electric storage waters heaters of any size. Thus, section 3(J)(1) of the High Performance Buildings Ordinance is preempted by federal law.

79.    Section 3(J)(2) of the High Performance Buildings Ordinance, as amended, further violates EPCA federal preemption by requiring NAECA-covered water heaters sold after January 1, 2009 to be Energy Star certified. The Energy Star qualification criteria require water heaters to have minimum efficiencies above the federal minimum standard. Section 3(J) further violates EPCA federal preemption because it imposes a total ban on the installation of electric resistance water heaters.

80.    The High Performance Buildings Ordinance appears to be one of general application rather than a government procurement regulation; thus, the normal EPCA federal preemption rules apply. The High Performance Buildings Ordinance is a prescriptive building code, not a performance-based building code. It imposes numerous energy efficiency standards that exceed the federal minimum standards in EPCA. It applies to both new construction and to repairs, alterations, and equipment replacements. It therefore does not meet any of the requirements of the building code exception from preemption in 42 U.S.C. § 6297(f)(3).

### Count I
### For Declaratory and Injunctive Relief under EPCA –
### 2007 Albuquerque Energy Conservation Code Volume I

81.    Plaintiffs repeat and re-allege paragraphs 1 through 80 of this Complaint as though fully set forth herein.

82.    Under EPCA, as amended by EPACT, the federal energy efficiency standards reflect a balance of competing goals, including energy independence and conservation, consumer choice, environmental protection, and the economic health of the appliance manufacturing

industry. To prevent interference with the balances struck by these standards, EPACT provides that, with limited exceptions, the standards in 42 § U.S.C. 6316(a) "shall . . . supersede any State or local regulation concerning the energy efficiency or energy use of a product" covered by EPACT.  42 U.S.C. § 6316(b)(2)(A).

83.   The described provisions of Volume I of the Albuquerque Energy Conservation Code impose standards that have not been granted a waiver of preemption and are not contained in new ASHRAE 90.1 standards.  The described provisions of Volume I are thus preempted under 42 U.S.C. 6316((b)(2)(A).  Federal law prohibits the adoption of regulations related to such standards, separate and apart from any attempt to enforce such regulations, unless a State seeks and receives a waiver of preemption.

84.   The described provisions of Volume I of the Albuquerque Energy Conservation Code also intrude upon the field of regulation occupied by the federal government, conflicts with federal law and regulation, and stands as an obstacle to the achievement of the objectives of Congress when it established a national program for the regulation of commercial heating and cooling appliances.

85.   The interstate commerce clause, U.S. Const. art. 1, sec. 8, cl. 3, creates open national markets and prohibits unreasonable burdens upon interstate commerce.

86.   The described provisions of Volume I of the Albuquerque Energy Conservation Code violate the rights of all the plaintiffs to freedom of commerce as guaranteed by the interstate commerce clause.

87.   The United States Constitution makes federal law and regulations "the supreme Law of the Land."  United States Constitution, article VI, cl. 2.

88.    Plaintiffs have legally protected interests under the Constitution, EPCA, and other federal laws (including 42 U.S.C. § 1983) in the full enforcement of the federal energy efficiency standards for covered products against Defendant's implementation of the Albuquerque Energy Conservation Code, Volume I.

89.    Plaintiffs will be actually and irreparably injured with respect to their federally protected interests if the described provisions of Volume I of the Albuquerque Energy Conservation Code are not declared unlawful and if Defendant is not enjoined from implementing the described provisions of Volume I.  The public interest will be served by such declaratory and injunctive relief.

90.    A clear and judicially cognizable controversy exists between Plaintiffs and Defendant regarding whether the described provisions of Volume I are expressly preempted by the federal energy efficiency laws.  The described provisions of Volume I are preempted by the federal statute and cannot be enforced.  Defendant disagrees and will enforce the described provisions of Volume I to the detriment of Plaintiffs.  Moreover, the federal standards for energy efficiency and energy use of commercial covered products prohibit the adoption of the ordinances challenged here, separate and apart from their enforcement, unless a State seeks and receives a waiver of preemption.

91.    Plaintiffs have no adequate legal remedy for the injuries they are suffering.  To redress the violations of federal law and the interference with Plaintiffs' rights, and pursuant to 28 U.S.C. §§ 1331, 1343, and 2201 and other provisions of law, including 42 U.S.C. §§ 1983 and 1988, Plaintiffs request a declaration that the described provisions of Volume I of the Albuquerque Energy Conservation Code are preempted and unenforceable.

92.    Defendant is implementing and will continue to implement Volume I of the Albuquerque Energy Conservation Code in violation of federal law unless enjoined by this Court from doing so.  Plaintiffs are therefore also entitled to injunctive relief restraining and redressing these violations of federal law under 42 U.S.C. §§ 1983 and 1988 and other provisions of law.

93.    An injunction will not impose hardship on Defendant, which is required to comply with federal law.

**Count II**
**For Declaratory and Injunction Relief –**
**2007 Albuquerque Energy Conservation Code, Volume II**

94.    Plaintiffs repeat and re-allege paragraphs 1 through 94 of this Complaint as though fully set forth herein.

95.    Under EPCA, as amended by NAECA, the federal energy efficiency standards reflect a balance of competing goals, including energy independence and conservation, consumer choice, environmental protection, and the economic health of the appliance manufacturing industry. To prevent interference with the balances struck by these standards, NAECA provides that, with limited exceptions, "no State regulation concerning the energy efficiency, energy use or water use of such covered product shall be effective . . . ."  42 U.S.C. § 6297(c).  Volume II of the 2007 Albuquerque Energy Conservation Code, as amended, imposes requirements for energy efficiency or energy use of covered products greater than federal standards and is preempted under 42  U.S.C. § 6297(c) because it does not meet any exceptions from preemption in 42 U.S.C. § 6297.  Federal law prohibits the adoption of regulations related to such standards, separate and apart from any attempt to enforce such regulations, unless a State seeks and receives a waiver of preemption from the Secretary of DOE.

29

96.   In addition, Volume II of the 2007 Albuquerque Energy Conservation Code, as amended, intrudes upon a field of regulation occupied by the federal government, conflicts with federal law and regulation, and stands as an obstacle to the achievement of the objectives of Congress when it established a national program for the regulation of energy efficiency and energy use for residential heating and cooling appliances.

97.   The interstate commerce clause, U.S. Const. art. 1, sec. 8, cl. 3, creates open national markets and prohibits unreasonable burdens upon interstate commerce.

98.   The described provisions of Volume II of the Albuquerque Energy Conservation Code violate the rights of all the plaintiffs to freedom of commerce as guaranteed by the interstate commerce clause.

99.   The United States Constitution makes federal law and regulations "the supreme Law of the Land."  United States Constitution, article VI, cl. 2.

100. Plaintiffs have legally protected interests under the Constitution, EPCA and other federal laws (including 42 U.S.C. § 1983) in the full enforcement of the federal energy efficiency and energy use standards for covered products against Defendant's implementation of the identified provisions of Albuquerque Energy Conservation Code, Volume II.

101. Plaintiffs will be actually and irreparably injured with respect to their federally protected interests if the identified provisions of Volume II of the 2007 Albuquerque Energy Conservation Code are not declared unlawful and if Defendant is not enjoined from implementing the provisions.  The public interest will be served by such declaratory and injunctive relief.

102. A clear and judicially cognizable controversy exists between Plaintiffs and Defendant regarding whether the identified provisions of Volume II of the 2007 Albuquerque

30

Energy Conservation Code are preempted by EPCA. The identified provisions of Volume II are preempted by federal law and cannot be enforced. Defendant disagrees and will enforce Volume II to the detriment of Plaintiffs. Moreover, the federal energy efficiency and energy use laws governing covered products prohibit the adoption of the provisions challenged here, separate and apart from their enforcement, unless a State has sought and received a waiver of preemption from the Secretary of DOE.

103. Plaintiffs have no adequate legal remedy for the injuries they are suffering. To redress the violations of federal law and the interference with Plaintiffs' rights, and pursuant to 28 U.S.C. §§ 1331, 1343, and 2201 and other provisions of law, including 42 U.S.C. §§ 1983 and 1988, Plaintiffs request a declaration that the identified provisions of Volume II of the 2007 Albuquerque Energy Conservation Code are preempted and unenforceable.

104. Defendant is implementing and will continue to implement the identified provisions of Volume II of the Albuquerque Energy Conservation Code in violation of federal law unless enjoined by this Court from doing so. Plaintiffs are therefore also entitled to injunctive relief restraining and redressing these violations of federal law under 42 U.S.C. §§ 1983 and 1988 and other provisions of law.

105. An injunction will not impose hardship on Defendant, which is required to comply with federal law.

### Count III
### For Declaratory and Injunctive Relief–
### Albuquerque High Performance Buildings Ordinance

106.  Plaintiffs repeat and re-allege paragraphs 1 through 109 of this Complaint as though fully set forth herein.

107.  This Count of the Complaint contends that Defendant is acting in violation of EPCA, as amended by NAECA, in its adoption and enforcement of the High Performance Buildings Ordinance, as amended.  This Count seeks relief in addition to the relief sought in Counts I and II.

108.  Under EPCA, as amended by NAECA, the federal energy efficiency standards reflect a balance of competing goals, including energy independence and conservation, consumer choice, environmental protection, and the economic health of the appliance manufacturing industry.  To prevent interference with the balances struck by these standards, EPCA provides that, with limited exceptions, the standards in 42 § U.S.C. 6316(a) "shall . . . supersede any State or local regulation concerning the energy efficiency or energy use of a product" covered by EPCA.  42 U.S.C. § 6316(b)(2)(A).

109.  The High Performance Buildings Ordinance, as amended, imposes standards that have not been granted a waiver of preemption and does not qualify for any statutory exception from federal preemption.  The identified provisions of the High Performance Buildings Ordinance, as amended, are thus preempted under 42 U.S.C. § 6297.  Federal law prohibits a local government's adoption of standards for energy efficiency and energy use that are more stringent than federal standards, separate and apart from any attempt to enforce such regulations unless the State seeks and receives a waiver of preemption from the Secretary of DOE.

110. The High Performance Buildings Ordinance, as amended, also intrudes upon the field of regulation occupied by the federal government, conflicts with federal law and regulation, and stands as an obstacle to the achievement of the objectives of Congress when it established a national program for the regulation of the energy efficiency and energy use of major home and commercial appliances.

111. The interstate commerce clause, U.S. Const. art. 1, sec. 8, cl. 3, creates open national markets and prohibits unreasonable burdens upon interstate commerce.

112. The described provisions of the High Performance Buildings Code violate the rights of all the plaintiffs to freedom of commerce as guaranteed by the interstate commerce clause.

113. The United States Constitution makes federal law and regulations "the supreme Law of the Land." United States Constitution, article VI, cl. 2.

114. Plaintiffs have legally protected interests under the Constitution, EPCA, NAECA and other federal laws (including 42 U.S.C. § 1983) in the full enforcement of the federal appliance energy efficiency and energy use standards against Defendant's adoption and implementation of more stringent standards.

115. Plaintiffs will be actually and irreparably injured with respect to their federally-protected interests by enforcement of the requirements of the EPCA, as amended by NAECA, if the identified provisions of the High Performance Buildings Ordinance, as amended, are not declared unlawful and if Defendant is not enjoined from enforcing these provisions. The public interest will be served by such declaratory and injunctive relief.

116. Plaintiffs have no adequate legal remedy for the injuries they are suffering. To redress the violations of federal law and the interference with Plaintiffs' rights, and pursuant to 28 U.S.C. §§ 1331, 1343, and 2201 and other provisions of law, including 42 U.S.C. §§ 1983 and

1988, Plaintiffs request a declaration that the identified provisions of the High Performance Buildings Ordinance, as amended, are preempted and unenforceable.

117. A clear and judicially cognizable controversy exists between Plaintiffs and Defendant City regarding whether Defendant may enforce the High Performance Buildings Ordinance, as amended.  The High Performance Buildings Ordinance, as amended, cannot be enforced without violating 42 U.S.C. §§ 6295 and 6297.  Defendant will enforce the High Performance Buildings Ordinance, as amended, to the detriment of Plaintiffs.

118. To redress the violations of federal law and the interference with Plaintiffs' rights described herein, and pursuant to 28 U.S.C. §§ 1331, 1343, and 2201-2202 and other provisions of law, including 42 U.S.C. §§ 1983 and 1988, Plaintiffs request a declaration that the High Performance Buildings Ordinance, as amended, is preempted by the federal law.

119. Defendant will continue to enforce the High Performance Buildings Ordinance, as amended, in violation of EPCA, as amended by NAECA, and in violation of Plaintiffs' rights under federal law, unless enjoined by this Court from doing so.  Plaintiffs are therefore also entitled to injunctive relief restraining and redressing these violations of federal law and their rights under 42 U.S.C. §§ 1983 and 1988 and other provisions of law.

120. An injunction will not impose hardship on Defendant, which is required to comply with federal law.

WHEREFORE, Plaintiffs respectfully request that this Court enter the following relief:

A.    A declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the identified provisions of the 2007 Albuquerque Energy Conservation Code, Volume I,  the 2007 Albuquerque Energy Conservation Code, Volume II, as

amended, and the Albuquerque High Performance Buildings Ordinance, as amended, violate federal law in the manners alleged above.

B.      Preliminary and permanent injunctions, pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendant and its officials from implementing or enforcing the identified provisions of the City Ordinances.

C.      An award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other provisions of federal law.

D.      Such other relief available under federal law that may be considered appropriate under the circumstances, including other fees and costs of this action to the extent allowed by federal law.

> MODRALL, SPERLING, ROEHL,
>  HARRIS & SISK, P.A.
>
> *Electronically Filed*
>
> By____/s/ John R. Cooney_____
> John R. Cooney
> Leslie M. Padilla
> Attorneys for Plaintiffs
> P.O. Box 2168
> Albuquerque, NM 87103
> (505) 848-1800
> jrcooney@modrall.com
> lpadilla@modrall.com

K:\dox\client\83365\0001\W0846442.DOC