**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

THE AIR CONDITIONING, HEATING AND
REFRIGERATION INSTITUTE; et. al.,

       Plaintiffs,

v.                                        No. CIV-08-633 MV/RLP

CITY OF ALBUQUERQUE,

       Defendant.

**PLAINTIFFS' CLOSING STATEMENT IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

This is a case of *express* federal preemption.  The Energy Policy and Conservation Act ("EPCA"), as amended by the National Appliance Energy Conservation Act ("NAECA") and the Energy Policy Act of 1992 ("EPACT"), regulates in extraordinary detail the energy efficiency and energy use of covered HVAC products and water heaters.  Through EPCA, Congress established national public policy in balancing the energy efficiency of HVAC products and water heaters with the interests of American manufacturers and consumers in competitive markets that deliver energy efficient products while achieving economies of scale.[1]  EPCA *expressly* preempts state and local "laws, regulations, or other requirements" that concern the "energy efficiency or energy use" of covered residential products.  42 U.S.C. § 6297(c).  Likewise, EPCA *expressly* preempts state and local regulations "concerning the energy efficiency [and] energy use" of covered commercial products.  42 U.S.C. § 6316(b)(2)(A).

Nothing that the City has said in this proceeding supports a conclusion that the challenged provisions of the City Ordinances survive federal preemption.  In fact, the City *admits* that portions of the City Ordinances are preempted because they impose prescriptive

---

[1] *See* discussion of EPCA and NAECA legislative history at pp. 8-10 of Plaintiffs Motion (Doc. No. 40).

energy efficiency standards on NAECA- and EPACT-covered products.   The remaining questions stem from the City's insistence that by providing various alternative means of compliance for both commercial and residential products, the City has effectively avoided preemption.  Plaintiffs have shown, however, that the City's "alternatives" do not meet the clear terms of NAECA's "building code" exception at 42 U.S.C. § 6297(f)(3).  Plaintiffs have further shown that to use an "alternative" to compliance while using only products that comply with federal minimum standards would in effect impose a penalty in the form of additional costs to improve a building's energy efficiency.  Such a penalty is clearly a "requirement" and is thus prohibited by federal law.

I.     **CLEAR FEDERAL LAW PREVENTS THE CITY FROM EXPRESSLY OR EFFECTIVELY IMPOSING ENERGY EFFICIENCY STANDARDS ON COVERED RESIDENTIAL AND COMMERCIAL HVAC PRODUCTS AND WATER HEATERS.**

NAECA's preemption provision as to residential products is clear:  "no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product" unless the regulation falls into an exception.  42 U.S.C. § 6297(c).  A "State regulation" is defined as any "law, regulation, or other requirement of a State and its political subdivisions."   42 U.S.C. § 6297(a)(2)(A).  Likewise, EPACT's preemption provision as to commercial products is also clear:  "a standard prescribed or established under [452 U.S.C. § 6313(a)] shall, beginning on the effective date of such standard, supercede and State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established pursuant to such section." 42 U.S.C. § 6316(b)(2)(A).

The United States Supreme Court has repeatedly emphasized that "any understanding of the scope of a preemption statute must rest primarily on a 'fair understanding of *congressional*

*purpose*.'" *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)    (quoting *Cipollone v. Liggett Group, Inc*., 505 U.S. 504, 530 (1992)) (emphasis in original).

Here, not only do we know Congress's purpose as to NAECA generally, we also know Congress's purpose in including the "building code" exception for residential products at 42 U.S.C. § 6297(f)(3).  As to Congress's general purpose, NAECA was intended to meet two "central tenets":   "express energy conservation standards" and a stringent provision to "preempt[] State law under most circumstances."  H. R. Rep. 100-11 at 19 (emphasis added).  As to the building code exception, Congress wanted to "prevent[] State building codes from being used as a means of setting mandatory State appliance standards in excess of the Federal standards."  H. R. Rep. 100-11 at 26.  The building code exception was intended to give states flexibility, but this flexibility was "limited" to "ensure that performance-based codes cannot expressly or *effectively* require the installation of covered products whose efficiencies exceed either the applicable Federal standard . . ."  H. R. Rep. 100-11 at 26 (emphasis added).   It was Congress's intent that a qualifying building code "follow a one-for-one equivalency as closely as possible, to assure that the credits for exceeding Federal standards are even-handed and are not unfairly weighted resulting in undue pressure on builders to install covered products exceeding Federal standards."  S. Rep. 100-6 at 11 (emphasis added).

The testimony of City witness John Buchholz and Stace McGee confirmed that using the "alternative compliance paths" of LEED Silver, Build Green NM Silver, Volume II's Section 404, or Volume II's Section 405 would require a homeowner to incur substantial additional expense if that homeowner chose to install covered products permitted by federal law. Additional expense would be necessary for replacements of products, add-ons and new home construction.  In order to obtain LEED Silver certification for a new home, Mr. Grace testified

that the cost is at least $2,500--and that covers just the LEED inspection and certification process.  The actual cost of making the needed energy efficiency improvements in the home would be some amount less than $75,000 to achieve the City's energy efficiency goals if federal compliant products used. Mr. Perry testified that additional design costs would be incurred.

Mr. Buchholz admitted that even for "add ons" or replacements, a homeowner could satisfy code using only federally compliant products, but only if he or she were willing and able to "make up the difference" in other parts of the residence.  There is no question that this would involve significant additional expense to the homeowner, and would impose a "penalty" for use of products permitted by federal law.

"Neither state nor local laws can be enforced in such wise as to 'undercut' the objectives of federal laws.  *Chambers v. Capital Cities/ABC*, 851 F. Supp. 543 (S.D.N.Y. 1994) (citing *Ft. Halifax Packing Co. v. Coyne*, 482 U.S. 1, 20 (1987).  "[Neither state nor local laws] can be implemented in a way which causes 'interference with policies implicated by the structure' of federal statutes."  *Chambers v. Capital Cities/ABC*, 851 F. Supp. 543 (S.D.N.Y. 1994) (quoting *Metropolitan Life Insurance Co. v. Mass*, 471 U.S. 724, 749 (1985).

There is simply no question, as in *Morales v. Trans World Airlines,* 504 U.S. 374 (1992), that the "prescriptive" efficiency requirements, and the supposed "compliance paths," all "concern" efficiency standards of covered equipment.   Prescriptive standards, therefore, unquestionably are preempted.  "Alternative compliance paths" are also preempted unless they satisfy requirements of 42 U.S.C. § 6297(f)(3). Plaintiffs have shown that the City's "alternatives" do not meet the clear requirements of § 6297(f)(3).  Plaintiffs have further shown, and the City's evidence confirms, that under the "alternative" compliance paths, in order to use products that comply with federal minimum standards, the homeowner must incur substantial

additional expense to meet the overall objective of energy usage (or "points" under the LEED or Build Green New Mexico programs, both of which measure compliance with reference to many factors that have nothing to do with energy usage).  Therefore, in order to have the "privilege" of using products which comply with federal law, the homeowner must pay a penalty in the form of additional design, construction, inspection and certification costs to improve a building's energy efficiency.  Such a penalty is clearly a "requirement" and is thus prohibited by federal law.

The City admits that to replace products that comply with federal minimum standards will require a homeowner to incur expense to make other modifications to other parts of his or her home in order to reach the same overall energy conservation levels that would equal the City's goals.  This would be true of "add-ons," renovations, alterations, or replacements.  As an example of the types of modifications a homeowner would have to make, Mr. McGee spoke of replacing the roof on his home, installing additional insulation and making other energy efficient modifications.

## II.   FOR COMMERCIAL PRODUCTS, FEDERAL LAW PREEMPTS THE CITY FROM IMPOSING PRESCRIPTIVE STANDARDS OR THE PURPORTED "ALTERNATIVES" TO COMPLIANCE FOUND IN VOLUME I.

John Bucholz, the City's Green Building Program Manager, testified for the City about the "alternatives" to compliance in Volume I, which applies to commercial and multi-family residential buildings. [2]   Volume I purports to allow several "alternatives" (or exemptions) for

---

[2] Note that most of the HVAC products and water heaters addressed in Volume I are commercial products covered by EPACT, although some are residential products covered by NAECA.  The discussion in this section applies only to EPACT-covered products.  To the extent Volume I addresses NAECA-covered products, this discussion is inapplicable. However, the prescriptive requirements of Volume II, which cover residential products covered by NAECA, are also preempted.

commercial products, including LEED Silver, a performance rating method requiring a 30% increase in energy efficiency performance over a baseline, and a "simplified" approach.

As Plaintiffs have shown in their prior briefing, Federal law simply allows for no such alternatives. There is no "building code" exception for commercial products comparable to the exception for residential products at 42 U.S.C. § 6297(f)(3). Except for a waiver from preemption, the *sole* alternative contemplated by Congress and clearly laid out in 42 U.S.C. § 6316(b)(2)  is when a state or local building code adopts standards for commercial covered products at the minimum efficiency levels of the current ASHRAE Standard 90.1. *See* 42 U.S.C. § 6316(b)(2)(B)(ii).  If a state or local government uses this exception, its building code standards cannot take effect  before the effective date of the applicable ASHRAE standard. *See id*. The amended ASHRAE standards attempted to be imposed by the City do not become effective until 2010 and the City cannot impose them now.

The City's purported "alternatives to compliance" for commercial products in Volume I are therefore invalid, since they do not meet any permissible exception from preemption.

III. **VOLUME II's PRESCRIPTIVE STANDARDS ARE PREEMPTED, WHILE THE "ALTERNATIVES TO COMPLIANCE" DO NOT COMPLY WITH NAECA'S EXCEPTIONS FROM PREEMPTION.**

The City *admits* that portions of the City Ordinances are preempted because they impose prescriptive energy efficiency standards on NAECA- and EPACT-covered products.  The only remaining issue, therefore, is whether the alternative "compliance paths" meet the stringent requirements of § 6297(f)(3). NAECA does not say that local regulations "concerning" energy efficiency are preempted unless "alternative compliance paths" are provided; it says that local regulations are preempted. Section 6297(f)(3) exempts from preemption only new residential building codes meeting its stringent requirements.

The City did not rebut Plaintiffs' showing (David Lewis's testimony) that LEED Silver, BGNM Silver, and Volume II Sections 404 and 405 do not satisfy 42 U.S.C. § 6297(f)(3).

LEED Silver:  The City's evidence confirms that compliance with LEED Silver, even if it were possible to do so, would require Albuquerque  homeowners, for the privilege of getting to use products at the federal minimum standards, to pay for additional design and construction costs in order to put their home in the "top 25%" and "elite" category of homes.   Mr.  Lewis's testimony, not rebutted by the City, showed that that LEED Silver cannot  satisfy § 6297(f)(3), because its "objective" (number of "points" required) includes  requirements having nothing to do with measurable energy consumption, including homeowner education, water use, siting, global impact, etc.

Build Green NM Silver:  This "alternative path" involves the same problems as LEED Silver certification.   That is, it cannot possibly satisfy the requirements of 42 U.S.C. § 6297(f)(3), because there is no "energy consumption objective" stated and it is impossible to trade off usage of more than compliant products "one for one" against other features by calculating energy usage.   In addition, Build Green NM Silver certification clearly requires a home to satisfy "more stringent" local code requirements.   In the case of the City Ordinances, those "more stringent" requirements would plainly be the prescriptive standards of Volume II.

Section 404 of Volume II:   This "alternative path" is extremely difficult to understand and follow, requiring that one shuttle back and forth from Volume II to the 2006 IECC, then back again. There is no doubt, however, that the City's adoption of its own Table 404.5.2(1) (in lieu of the IECC table) sets the "baseline building design" requiring use of HVAC/water heating products in excess of the federal standards, and therefore violates (at a minimum) §6297(f)(3)(D). Section 404 also requires compliance with "mandatory" requirements of the

Code, including (at least) the Code's outright ban on electric resistance water heating (permitted by federal law). And, the City's failure to properly amend the title of Section 403 requires the conclusion that all of Section 403 remains "mandatory." In addition, there is great confusion concerning what is "mandatory" and whether requirements stated as "prescriptive" or "minimum" will in fact be interpreted as "mandatory," (see testimony of David Perry and David Lewis), and whether person of ordinary intelligence would understand them all to be "required."

Section 405 of Volume II: This "alternative" suffers from the same problems as section 404 regarding compliance with "mandatory" requirements (*e.g.*, electric resistance water heating, what is "mandatory"). It is impossible (*see* testimony of David Lewis) to calculate "30% better" than the 2003 IECC (which is the baseline set by section 405), because the 2003 IECC does not even address water heating. Accordingly, it is impossible to calculate the energy consumption objective (subsection A of §6297), or the "one for one" trade-off (*Id.*subsection C). Further, if Albuquerque can require "30% better," why could not Santa Fe require 50% better, Roswell 75% better, Atlanta 100% better, etc? This is precisely the type of "balkanization" of energy efficiency requirements precluded by NAECA.

Mr. Buchholz admitted in his testimony that Sections 404 and 405 of Volume II set "baselines"; the City's problem is that the "baselines" clearly do not comply with § 6297(f)(3).

## IV. THE CITY SIMPLY REFUSES TO COMPLY WITH FEDERAL LAW.

Mr. Bucholz admitted that he was unaware of the federal statutes governing energy efficiency of HVAC products and water heaters when the Ordinances were originally drafted and passed by the City Council. He stated that the draft ordinances had been sent to City attorneys who did not raise the preemption issue. He also explained that the prescriptive portions were not lowered to be equivalent to the Federal minimum standards: he did not believe members of

8

the Green Ribbon Task Force, City staff, and the City Council would agree to do so.  This

manifests the clear intent of the City to ignore . It further supports the inference that it was the

intent of the City that the "alternative paths" were to be equivalent to the prescriptive standards

in the Code

The City's purposed "alternative paths to compliance" would require Albuquerque

homeowners to build or remodel their homes, or to replace their HVAC and water heating

equipment, at levels that are "the best in the country" and "cream of the crop."  Nonetheless, the

City insists that it is possible to use HVAC products and water heaters at the federal minimum

standards so long as a home or business       spends substantial additional sums to "offset" use of

federally compliant equipment.  In so doing, the City is effectively imposing a *penalty* on

compliance with federal law.

## V.   THE CITY CANNOT DISREGARD FEDERAL PREEMPTION, NO MATTER HOW CONCERNED IT IS ABOUT THE GLOBAL ISSUE OF CLIMATE CHANGE.

The City insists that its "alternatives to compliance" are not preempted by federal law,

but are instead merely local attempts to limit the contribution of the building sector to the serious

problem of global climate change.  The City justifies its actions by citing initiatives of the

National Conference of Mayors. The City frankly admits (Buchholz testimony) that its position

is that federal government action is not "quick enough" and that code writers – like Mr.

Buchholz and the City--must " do their part" to reduce global warming. However, Congress has

acted and has preempted local regulation. The energy efficiency requirements in NAECA and

EPACT have been constantly reviewed and updated by DOE. There is meaningful, ongoing

federal regulation in this area and express preemption, and the City simply cannot be allowed

under the Supremacy Clause to enact its own regulations concerning energy efficiency of covered products.

## VI. THE CHALLENGED PROVISIONS OF THE CITY ORDINANCES ARE UNCONSTITUTIONALLY VOID FOR VAGUENESS.

Plaintiffs have previously briefed our contention that the City Ordinances are unconstitutionally vague because they confer undue discretion on City building officials and because they cause persons "of common intelligence . . . necessarily [to] guess at [their] meaning and [to] differ as to [their] application. *See United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1999) (citation omitted). Testimony provided by both Plaintiffs and the City only drives home the point that the challenged provisions of the Ordinances should be struck down as unconstitutionally vague.

Plaintiffs offered three experienced professionals in Albuquerque's HVAC industry: David Perry, John Richardson, and Mike Salmon. All three testified that they either do not understand significant portions of the Ordinances or that they understand them differently than Mr. Bucholz does. Mr. Perry, for example, whose business has operated in Albuquerque for 50 years and whose employees include HVAC designers, stated that he found it impossible to read the Ordinances as imposing anything other than "mandatory" standards. Mr. Salmon and Mr. Richardson found it impossible to determine when it would be permissible to install a 78% AFUE furnace in a replacement situation, since the Ordinance's language regarding "extensive" renovations was vague and contained no guidelines. Plaintiffs' witness David Lewis, a long-time official of Lennox Industries who has worked extensively in federal and state regulatory contexts, testified that he did not know how the City's use of the terms "prescriptive,"

"minimum," and "mandatory" could be understood in any way other than meaning exactly the same thing.

Mr. Bucholz, the City's witness, underscored not only this confusion but also the impermissible discretion the Ordinances give to City Officials. When asked to explain Section 101.7.3 of Volume II, Mr. Bucholz stated that building officials would use their discretion to interpret it in a way that meant something other than its plain language. Mr. Bucholz in fact insisted numerous times during his testimony that he (and other city staff, presumably) would be able to use their discretion to interpret the Ordinances in a way that would allow the use of products at the federal minimum standards. This seems destined to produce precisely the type of "arbitrary and discriminatory enforcement" that legislative enactments must avoid. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

Even the City Council itself appears to have some doubt about the validity of the City Ordinances. Mr. Bucholz testified about the re-constitution of the Mayor's "Green Ribbon Task Force" ("GRTF"). The City Council passed a resolution requesting the Mayor to re-convene the GRTF, with a particular eye to looking at the effect of the Ordinances on replacement HVAC systems and water heaters. Mr. Bucholz was under the impression that the GRTF was to address replacement of residential products only, but was shown that the City Council resolution was not so limited.

## VII.    SINCE THE CITY'S PRESCRIPTIVE STANDARDS ARE PREEMPTED, ANY ALTERNATIVE METHODS OF COMPLIANCE WITH THOSE STANDARDS CANNOT SURVIVE UNDER NEW MEXICO LAW ON SEVERABILITY.

There is no possible way to read the City's prescriptive standards for HVAC products and water heaters (see Tables 6.3.1, 6.3.2, 7.3.1 and 7.3.1 in Volume I, and Tables 403.2, 403.9.2(a) and 403.9.2(b) in Volume II) in a manner that allows them to survive preemption. The City has

admitted as much.   In *all* their possible applications, therefore, the standards in these Tables are preempted to the extent they mandate higher energy efficiency requirements than the federal minimum standards.[3]  These invalid portions must then be struck down.  Assuming for sake of argument that the "alternatives" comply with EPCA (which Plaintiffs believe they do not), they are not capable of surviving as separate, independent, provisions.  Although Plaintiffs have briefed this severability point previously, the City's testimony--by again admitting that the prescriptive standards are preempted—underscores that the "alternatives" cannot survive by themselves.  *See Harvey E. Yates Co. v. Powell*, 98 F.3d 1222, 1240 (10th Cir. 1996) (invalid provisions cannot be severed from an ordinance and the remaining provisions survive when there is such interdependence of all provisions that the city council would not have enacted the remaining provisions by themselves).

## VIII.   PLAINTIFFS STAND BY THEIR BRIEFING TO THIS COURT ON RIPENESS, IRREPARABLE HARM AND THE OTHER ELEMENTS NEEDED TO SUPPORT A PRELIMINARY INJUNCTION.

Plaintiffs have previously briefed issues of ripeness, irreparable harm and the other elements needed to satisfy this Court's requirements for a preliminary injunction.  We will not repeat that briefing here.   As to irreparable harm, however, we note that the testimony of Plaintiffs' witness David Perry, John Richardson, and Mike Salmon spoke to the issue of irreparable harm, explaining, for example, the considerable good will they stand to lose from their customers should the City Ordinances be enforced.  The City did not rebut this testimony.

---

[3]  Note, however, that even if the City standards were e*quivalent* to federal minimum standards, they would still "concern" energy efficiency and thus be preempted.  See 42 U.S.C. § 6297

## CONCLUSION

Plaintiffs have met this Court's standard for a preliminary injunction by showing a high likelihood of success on the merits of their federal preemption claim and by demonstrating the irreparable harm they will experience should the City begin to enforce the Ordinances.  Should the challenged provisions of the City Ordinances, including the "alternatives to compliance," not be enjoined in order to preserve the statute quo until this can be tried, the clear goals of Congress--to avoid a hodge-podge of conflicting state and local regulations--will have been thwarted.

At the same time, the City has demonstrated near-total disregard for the federal law that controls this case and the Supremacy Clause of the United States Constitution.  The City's Green Building Program Manager, who played a key role in drafting the City Ordinances, was not even aware of the federal statutes implicated here until after he had drafted the codes.  The City Council's amendments to the Ordinances passed this year are little more than an attempt to make an end-run around federal preemption--an attempt that must be found to have failed.

MODRALL, SPERLING, ROEHL,
 HARRIS & SISK, P.A.

*Electronically Filed*

By____John R. Cooney, Attorney at Law_____
John R. Cooney
Douglas A. Baker
Leslie M. Padilla
Attorneys for Plaintiffs
P.O. Box 2168
Albuquerque, NM 87103
(505) 848-1800

13

WE HEREBY CERTIFY that on the 2nd day of October, 2008, we filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

John E. DuBois, Esq., Attorney for Defendant City of Albuquerque (jdubois@cabq.gov)
Bruce Klaw, Esq., Attorney for Defendant City of Albuquerque (bwklaw@stoel.com)
Adam Richins, Esq., Attorney for Defendant City of Albuquerque (ajrichins@stoel.com)
Jeremy Sacks, Esq., Attorney for Defendant City of Albuquerque (jdsacks@stoel.com)
Thomas Snyder, Esq., Attorney for Defendant City of Albuquerque (twsnyder@stoel.com)

MODRALL SPERLING ROEHL
  HARRIS & SISK, P.A.


By____/s/ John R. Cooney_____
John R. Cooney, Attorney for Plaintiffs

K:\dox\CLIENT\83365\0001\W0884760.DOCX

14