## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THE AIR CONDITIONING, HEATING AND
REFRIGERATION INSTITUTE, *et al.,*

       Plaintiffs,

v.                                                                    Civ. No. 08-633 MV/RLP

CITY OF ALBUQUERQUE,

       Defendant.


### <u>MEMORANDUM OPINION AND ORDER</u>

      **THIS MATTER** comes before the Court on Plaintiffs' Renewed Motion and

Memorandum Brief in Support of Partial Summary Judgment as to Volume I of the Albuquerque

Energy Conservation Code:  Commercial Covered Products (Doc. No. 89, filed September 4, 2009)

("Volume I Motion"), Plaintiffs' Renewed Motion and Memorandum in Support for Partial

Summary Judgment on Portions of Volume II (Doc. No. 90, filed September 4, 2009) ("Volume II

Motion"), and Plaintiffs' Renewed Motion and Memorandum Brief for Partial Summary Judgment

on Preemption of City of Albuquerque's Green Building Codes: Replacements (Doc. No. 91, filed

September 4, 2009) ("Replacements Motion").  For the reasons stated below, the Volume I Motion

will be **GRANTED in part** and **DENIED in part** without prejudice; the Volume II Motion will be

**GRANTED in part** and **DENIED in part** without prejudice; and the Replacements Motion will

be **DENIED** without prejudice.

**Background**

      On September 17, 2007, the Albuquerque City Council passed a bill which adopted a number

of uniform administrative and technical codes related to building and construction, including

Volumes I and II of the 2007 Albuquerque Energy Conservation Code ("the Code").  (Volume I

Motion ¶ 1 at 7). The Code "regulate[s] the design and construction of buildings for the effective use of energy." (Vol. I § 1.2 at 1, Doc. No. 39-2, filed September 12, 2008; Vol. II § 101.3 at 1, doc. No. 39-6, filed September 12, 2008). Volume I applies to commercial and multi-family buildings. (Vol. I § 2.2 at 2). Volume II applies to one- and two-family detached dwellings and townhouses. (Vol. II § 101.2 at 1).

Plaintiffs, three trade associations representing manufacturers, distributors and installers of heating, ventilation, air conditioning ("HVAC") products and water heaters, and twelve local distributors and contractors who sell and install HVAC products, assert that certain portions of the Code are preempted by federal law. (*See* Volume I Motion at 4).

**Volume I Motion**

Volume I provides three ways in which commercial and multi-family buildings can comply with the Code: two performance-based compliance paths and one prescriptive compliance path. Regarding the first performance-based compliance path, Volume I states that the provisions of the Code do not apply to buildings certified as LEED Silver or greater ("the LEED compliance path"). (*See* Vol. I § 2.4(b) at 2). Under the second performance-based compliance path, HVAC systems and equipment comply with the Code "if the *proposed building* is 30% more energy efficient than a *baseline building* that meets the minimum standards of ASHRAE Standard 90.1-1999" ("the 30% compliance path"). (*See* Vol. I §§ 6.2.1(b) and 6.5.1 at 13-14) (*emphasis in original*). The prescriptive compliance path, which is limited to small retail and office buildings, requires that the HVAC system and equipment comply with minimum efficiency standards. (*See* Vol. 1 §§6.2.1(a), 6.3, 7.2.1(a), 7.3.2). The prescriptive compliance path prescribes minimum efficiency standards for products that are more stringent than the applicable federal standards for those products and, in some

cases, prescribes additional minimum efficiency requirements not required by federal law.  (Motion ¶¶ 6-17 at 8-11).

Plaintiffs assert that Volume I is preempted by 42 U.S.C. § 6316(b)(2)(A) because "the provisions of Volume I of the 2007 Albuquerque Energy Conservation Code requir[e] the use of heating, ventilation, or air conditioning products or water heaters with energy efficiency standards more stringent than federal standards."  (Volume I Motion at 3-4, 14-16).

In determining whether a statute preempts state law, the Court's "primary task in interpreting statutes [is] to determine congressional intent, using traditional tools of statutory construction." *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008).  The Court "begin[s] by examining the statute's plain language, and if the statutory language is clear, [the] analysis ordinarily ends." *Id.* ("it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it").  "If the statute's plain language is ambiguous as to Congressional intent, [the Court] look[s] to the legislative history and the underlying public policy of the statute."  *Id.*

The preemption statute states:

> A standard prescribed or established under section 6313(a) of this title shall, beginning on the effective date of such standard, supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established pursuant to such section.

42 U.S.C. § 6316(b)(2)(A).  The plain language of the preemption statute makes clear that Congress intended the preemption to be broad in scope.  (*See* Mem. Op. and Order at 12-13, Doc. No. 61, filed October 3, 2008 (the use of the word "concerning" suggests that Congress intended the preemption provision to be expansive)).  Congress recognized that the National Appliance Energy Conservation Act "preempts state law under most circumstances."  H. Rep. 100-11 at 19 (March 3, 1987).

3

The City argues the prescriptive compliance path is not preempted because there are other lawful compliance paths.  According to the City, because the 30% compliance path is a lawful performance-based compliance path, "the prescriptive path - which is only available to buildings under 20,000 square feet - would be saved from preemption under the following case law as a lawful alternative."  (Response at 39-41, Doc. No. 118, filed January 26, 2010).  The City contends that the "optional prescriptive path merely provides guidance as to how the energy goals reflected in the two performance-based paths can be obtained."  (*Id.* at 39).  The Court disagrees that the prescriptive path merely provides guidance.  The prescriptive path sets forth specific requirements that HVAC systems and equipment must meet in order to comply with the Code if a building does not comply with the two performance-based compliance paths.  (*See* Vol. I § 2.4(b) at 2, §§ 6.2.1(b) and 6.5.1 at 13-14, and §§6.2.1(a),  6.3, 7.2.1(a), 7.3.2).

The City cites two cases for the proposition that "a local law is not preempted when it presents regulated parties with viable, non-preempted options."  (Response at 39-41).  In the first case, the United States Supreme Court considered whether state statutes that required hospitals to collect surcharges from  patients covered by commercial insurance purchased by health care plans governed by the Employee Retirement Income Security Act ("ERISA") were preempted by ERISA. *See New York State Conf. of Blue Cross &  Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995).  The Supreme Court found that an indirect influence resulting from the surcharges does not bind plan administrators to any particular choice and consequently does not function as a regulation of an ERISA plan itself, and held that those statutes do not bear the requisite "connection with" ERISA plans to trigger preemption.  (*Id.* at 659-661).  The City does not point to anywhere in the case where the Supreme Court stated that a local law is not preempted when it presents regulated

4

parties with viable, non-preempted options.

The second case cited by the City, a district court case from the Southern District of New York, does state that "a local law is not preempted when it only indirectly regulates parties within a preempted field and presents regulated parties with viable, non-preempted options, as held in *Travelers Insurance* and *Dillingham Construction*." *Metropolitan Taxicab Bd. of Trade v. City of New York*, 633 F.Supp.2d 83, 95-96 (S.D.N.Y. 2009). However, the district court for the Southern District of New York does not indicate where *Travelers Insurance* and *Dillingham Construction* hold that a local law is not preempted if it presents "viable, non-preempted options." *Dillingham Construction*, like *Travelers Insurance*, held only that the subject state laws were not preempted because they did not have a "connection with," and therefore did not "relate to," ERISA plans. *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 319, 334 (1997).

The City has not persuaded the Court that a local law is not preempted when it presents regulated parties with viable, non-preempted options. (*See* Mem. Op. and Order at 14, Doc. No. 61, filed October 3, 2008 ("the Court can find no support for the novel proposition that the inclusion of one or more alternatives for compliance in a regulation keeps each of the alternatives from being considered a regulation")). Moreover, concluding that the prescriptive standards in Volume I are not preempted would defeat the purpose behind Section 6297's broad preemption provision. The legislative history indicates that during the 1970s, some states began enacting appliance efficiency standards. S. Rep. No. 110-6 at 3 (January 20, 1987). Consequently, "appliance manufacturers were confronted with the problem of a growing patchwork of differing State regulations which would increasingly complicate their design, production and marketing plans." S. Rep. No. 110-6 at 3

(January 20, 1987).  One purpose of National Appliance Energy Conservation Act is to "reduce the regulatory and economic burdens on the appliance manufacturing industry through the establishment of national energy conservation standards for major residential appliances."  S. Rep. No. 110-6 at 1 (January 20, 1987); H. Rep. No. 1000-11 at 24 (March 3, 1987) (legislation "designed to protect the appliance industry from having to comply with a patchwork of numerous conflicting State requirements").  The prescriptive standards in Volume I of the City of Albuquerque's Code, which are more stringent than the federal standards, could complicate the design, production and marketing plans of appliance manufacturers, thus thwarting Congressional intent.

The Court concludes that the prescriptive provisions of Volume I requiring the use of heating, ventilation, or air conditioning products or water heaters with energy efficiency standards more stringent than federal standards are regulations that concern the energy efficiency of covered products and, therefore, are preempted as a matter of law.

Having ruled on that portion of the Motion relating to the prescriptive compliance path, the Court now turns to the two performance-based compliance paths.  Plaintiffs contend that some of the performance standards in Volume I are preempted.  Plaintiffs' Statement of Undisputed Material Facts contains only one fact that expressly relates to the two performance-based compliance paths. Undisputed Material Fact 17 states:  "The City asserts that Volume I provides two 'performance-based' paths to compliance with the requirements of Volume I:  LEED Silver certification . . and the 'performance rating method'."  (*See* Motion at 11, Fact 17).  Plaintiffs present a two-paragraph argument asserting that some of the performance standards and the performance-based compliance paths in Volume I are preempted.  (*See* Motion at 15-16 ).  Although Plaintiffs address the performance-based compliance paths in more detail in their Reply, the cursory argument in their

Motion regarding the performance-based compliance paths, coupled with very few material facts regarding the performance-based compliance paths, has not shown the absence of genuine issues of material fact or demonstrated that Plaintiffs are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (the movant bears the initial burden of making a *prima facie* demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998) (discussing general rule forbidding new arguments in reply); D.N.M.LR-Civ. 56.1(b) (memorandum in support of motion for summary judgment must contain a concise statement of the reasons in support of the motion with authorities and a statement of all of the material facts as to which movant contends no genuine issue exists).  The Court will deny without prejudice that portion of Plaintiffs' Motion that seeks to have the performance-based compliance paths declared preempted as a matter of law.

**Volume II Motion**

Volume II , which applies to one- and two-family detached dwellings and townhouses, provides five options for compliance:  (1) Prescriptive, (2) Section 404, (3) Section 405, (3) LEED Silver, and (5) Build Green New Mexico.  In their Volume II Motion, Plaintiffs contend that all of the compliance paths, except Section 405, are preempted as a matter of law.

Prescriptive Provisions

The Prescriptive provisions of Volume II are similar to the prescriptive provisions of Volume I which the Court concluded concerned the energy efficiency of covered products and, therefore, were preempted as a matter of law.  The prescriptive provisions of Volume II require that certain HVAC equipment meet specified energy efficiency standards which exceed the federal standards.  (*See* Volume II Motion ¶¶ 5-7 at 7-9; Vol. II §§ 403.1-403.2, Table 403.2).  The City,

incorporating its argument from its Volume I response, argues that because Section 405 is a lawful performance-based path, the prescriptive provisions are saved from preemption as lawful alternatives.  (*See* Volume II Response at 11, Doc. No. 116, filed January 26, 2010).  The Court concludes, for the same reasons that it did regarding the prescriptive provisions in Volume I, that the prescriptive provisions of Volume II are regulations that concern the energy efficiency of covered products and, therefore, are preempted as a matter of law.

Section 404

Section 404 uses a "standard reference design" which is based on HVAC products that exceed the federal energy efficiency standards for those products.  (*See* Volume II Motion ¶ 10 at 10; Vol. II Table 404.5.2(1)).  The Court is not persuaded by the City's contention that the standards in Section 404 are "used to calculate the baseline for a performance-based code [but] does not need to be followed when submitting a proposed design."  (Volume II Response at 5).  Volume II requires that projects comply with Section 404 or other prescriptive or performance provisions.  (Volume II § 401.1 at 7).  Section 404 is, therefore, a regulation which concerns the energy efficiency or energy use of a covered product.

Under one exception to the preemption statute, "a regulation or other requirement contained in a State or local building code for new construction concerning the energy efficiency or energy use of such covered product is not superseded by this part if the code complies with all of the following requirements . . . ."  42 U.S.C. § 6297(f)(3).  One of those requirements states:

> If the code uses one or more baseline building designs against which all submitted building designs are to be evaluated and such baseline building designs contain a covered product subject to an energy conservation standard . . . the baseline building designs are based on the efficiency level for such covered product which meets but does not exceed such standard . . . .

42 U.S.C. § 6297(f)(3)(D).  Because its standard reference design is based on efficiency levels which exceed the federal efficiency standards, Section 404 does not qualify for the new building exception to the preemption statute.

<u>LEED Silver and Build Green New Mexico</u>

Leadership in Energy and Environmental Design ("LEED") is a voluntary rating system for "green" building certification.  (*See* Motion ¶ 11 at 10).  Volume II provides that "LEED H Silver certification . . . [is] deemed to meet, or exceed, the energy efficiency required by this code." (Volume II § 103.2 at 4).  Build Green New Mexico is a voluntary program, similar to LEED for Homes.  (*See* Motion ¶ 13 at 11).  Volume II provides that "Build Green New Mexico Silver certification [is] deemed to meet, or exceed, the energy efficiency required by this code."  (Volume II § 103.2 at 4).

The preemption statute preempts "any State or local regulation concerning the energy efficiency or energy use of *a product* for which a standard is prescribed or established pursuant to such section."   42 U.S.C. § 6316(b)(2)(A) (*emphasis added*).   The National Appliance Energy Conservation Act provides for three possible exceptions from preemption, two of which the Parties agree do not apply in this case.  The third possible exception to preemption applies if the regulation is in a building code for new construction.  *See* 42 U.S.C. §6297(f)(3).  Section 6297(f)(3) provides that "a regulation or other requirement contained in a State or local building code for new construction concerning the energy efficiency or energy use of such covered product is not superseded by this part if the code complies with [seven specified requirements]."

Plaintiffs set forth facts to support their contention that LEED Silver and Build Green New Mexico do not comply with the building code exception to preemption.  (*See* Volume II Motion

¶¶ 11-14 at 10-11, 18).  However, Plaintiffs do not set forth any facts to show that LEED Silver and Build Green New Mexico fall within the scope of the preemption statute.  The preemption statute applies to "products."  42 U.S.C. § 6316(b)(2)(A).  In their Reply (Doc. No. 125 at 6, filed March 12, 2010), Plaintiffs state that LEED Silver (Exhibit 4) and Build Green New Mexico (Exhibit 9), both of which were admitted into evidence during the preliminary injunction hearing (October 1, 2008, Tr. at 126:15-127:24, 194:7-195:9), are regulations concerning energy efficiency or energy use of covered products but do not point to the relevant provisions of LEED Silver or Build Green New Mexico.  LEED Silver (Exhibit 4) is 114 pages; Build Green New Mexico (Exhibit 9) is 193 pages.  The Court is not obligated to comb the record in order to make a party's arguments for the party.  *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000).

       In their Motion for summary judgment now before the Court, Plaintiffs seek a declaration that the LEED Silver and Build Green New Mexico paths in Volume II are preempted as a matter of law.  (*See* Volume II Motion at 1).  Plaintiffs ultimately seek a permanent injunction enjoining the City from enforcing the provisions of Volume II.  (*See* Second Amended Complaint at 37, Doc. No. 77, filed January 13, 2009).  Plaintiffs rely on the conclusions in the Court's Memorandum Opinion and Order (Doc. No. 61, filed October 3, 2008) in which the Court granted Plaintiff's motion for a preliminary injunction.  (*See* Volume II Motion at 18; Mem. Op. and Order, Doc. No. 61 at 21 (stating "*Based on the limited evidence before the Court*, it *appears* that every performance-based option in Volume II of the Code fails to meet at least one of the seven requirements for an exemption from preemption) (*emphasis added*) ).  Plaintiff's reliance on the Court's Order granting their motion for a preliminary injunction is unavailing because the Court's Order was based on the standard for granting a preliminary injunction rather than the standard for a motion for summary

10

judgment.  A preliminary injunction requires showing only a substantial likelihood of success on the merits whereas a party seeking summary judgment must demonstrate that they are entitled to judgment as a matter of law.  *See Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) ("a permanent injunction requires showing actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits"); Fed. R. Civ. P. 56.

Plaintiffs have not met their initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law as to whether the LEED Silver and Build Green New Mexico compliance paths are preempted.  The Court will deny without prejudice that portion of Plaintiffs' Volume II Motion that seeks a declaration that the LEED Silver and Build Green New Mexico paths are preempted.

**Replacements Motion**

Plaintiffs filed their Renewed Motion (Doc. No. 91, filed September 4, 2009 ("Replacements Motion")) seeking a partial summary judgment declaring that the City of Albuquerque 2007 Energy Conservation Code, Volumes I and II, to the extent they apply to replacements, repairs, renovations, changes in space conditioning, changes in occupancy, and alterations that would require use of HVAC products or water heaters at energy efficiency levels more stringent than the applicable federal standards, are preempted by federal law.

The Court has concluded that the prescriptive provisions of Volumes I and II are preempted by federal law.  Volumes I and II are, therefore, partially invalid.  "[B]efore a partially invalid statute . . . can be held to still be in force it must satisfy three tests."  *New Mexico v. Spearman*, 503 P.2d 649, 651 (N.M. Ct. App. 1972).  The Parties have not addressed whether the prescriptive provisions

of Volumes I and II are severable, that is whether the remainder of Volumes I and II can be held to still be in force. *See Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999) ("The inquiry into whether a statute is severable is essentially an inquiry into legislative intent"). The Court declines to rule on Plaintiffs' Replacements Motion until after it determines whether the preempted prescriptive provisions are severable. *See Stafford v. United States*, 208 F.3d 1177, 1179 (10th Cir. 2000) (court has inherent power to regulate docket and promote judicial efficiency). The Court will deny Plaintiffs' Replacements Motion without prejudice. Plaintiffs may refile their Replacements Motion if the Court determines that the prescriptive provisions are severable.

**IT IS SO ORDERED.**

Dated this 30th day of September, 2010.

_____

**MARTHA VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorneys for Plaintiffs:*

Douglas A. Baker
Atkinson, Thal & Baker, P.C.
201 3rd St. NW #1850
Albuquerque , NM 87102-3348

John R. Cooney
Leslie M Padilla
Modrall Sperling Roehl Harris & Sisk PA
PO Box 2168
Albuquerque , NM 87103

*Attorneys for Defendant:*

Adam Richins
101 S. Capitol Blvd
Suite 1900
Boise , ID 83702

Jeremy Sacks
Bruce Klaw
Stoel Rives LLP
900 SW Fifth Avenue
Suite 2600
Portland , OR 97204

John E. DuBois
Albuquerque City Attorney's Office
PO Box 2248
Albuquerque , NM 87103

Thomas Snyder
Stoel Rives, LLP
999 18th Street
Suite 2700
Denver , CO 80202